1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANGE INSURANCE ASSOCIATION, | Case No.  1:15-cv-00526-SAB |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| GULZAR SRAN, et al., | ORDER DENYING DEFENDANT SRAN'S MOTION TO STRIKE NEW MATERIAL AND NEW ARGUMENT ADVANCED IN PLAINTIFF'S REPLY BRIEF |
| Defendants. | |
| | (ECF Nos. 40, 48) |

Currently before the Court is Plaintiff Grange Insurance Association's ("Plaintiff" or "Grange") motion for partial summary judgment against Defendant Caeden Fisher ("Fisher") and Defendant Gulzar Sran ("Sran") with regard to Plaintiff's First and Second Causes of Action in the Complaint and Sran's Eleventh Affirmative Defense.  (ECF No. 40.)[1]  Also before the Court is Sran's motion to strike new material and new argument advanced in Plaintiff's reply brief. (ECF No. 48.)

The hearing on Plaintiff's motion for partial summary judgment and Sran's motion to strike new material and new argument advanced in Plaintiff's reply brief took place on March 30, 2016.  Brandt Wolkin appeared on behalf of Plaintiff.  James Wilkins appeared on behalf of Fisher.  Benjamin Nicholson and James Wagoner appeared on behalf of Sran.  For the reasons

---

[1] The Court notes that Grange, Sran, Fisher, and Third-Party Defendants JKG Insurance Agency and Harry Gill have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes.  (ECF Nos. 15, 17, 18, 31.)

set forth below, the Court grants in part Plaintiff's motion for partial summary judgment and denies Sran's motion to strike new material and new argument advanced in Grange's reply brief.

## I.

## BACKGROUND

On November 22, 2014, Sran was transporting a forklift on a trailer behind his pickup truck on State Route 180. (ECF No. 2-3.) As Sran was making a left hand turn, a vehicle driven by Jennifer Fisher stuck the rear of the trailer. Ms. Fisher sustained fatal injuries. On January 20, 2015, a complaint was filed in Fresno County Superior Court seeking damages for the wrongful death of Ms. Fisher, Caeden Fisher v. Gulzar Singh Sran, Case No. 15CECG00197 (the "Fisher Action").

The complaint in this action was filed on April 2, 2015. (ECF No. 2.) Plaintiff's complaint raises four causes of action: two claims for declaratory relief and two claims for equitable reimbursement. Plaintiff names Sran and Fisher as defendants. The claims raised in Plaintiff's complaint arise from two insurance policies that Plaintiff issued to Sran. These policies are at issue in this action and consist of a FarmPak Plus Farming and Personal Liability Insurance policy ("FarmPak policy") and a Farm and Commercial Liability Excess policy ("Excess policy").

In the First Cause of Action, Plaintiff seeks a judicial declaration that no coverage exists under FarmPak policy, number FP01030181, effective for the period of April 23, 2014 through April 23, 2015, for the claims asserted in the Fisher Action. Plaintiff seeks a declaration that it has no obligation to defend or indemnify Sran with respect to the Fisher Action. In the Second Cause of Action, Plaintiff seeks a judicial declaration that no coverage exists under the Excess policy, number UC 7105220975, effective for the period of November 21, 2014 through April 23, 2015, for the Fisher Action. Plaintiff seeks a declaration that it has no obligation to defend or indemnify Sran with respect to the Fisher Action.

On June 11, 2016, Sran filed an Answer to the Complaint, in which he raises seventeen affirmative defenses. The Eleventh Affirmative Defense is for good faith and fair dealing.

Sran filed a Third Party Complaint on June 25, 2015. (ECF No. 10.) Sran named JKG

1    Insurance Agency ("JKG") and Harry Gill ("Gill") as Third-Party Defendants.  The Third Party

2    Complaint raises claims for professional negligence, negligent misrepresentation, breach of oral

3    contract, equitable indemnity, and equitable contribution arising from the sale of the FarmPak

4    policy and the Commercial Excess policy.  Sran alleges that Third-Party Defendants had

5    misrepresented the coverages provided under the policies and failed to procure the requested

6    coverage.

7         On January 22, 2016, Sran filed a Counterclaim against Grange.  (ECF No. 38.)  Sran's

8    counterclaim raises claims for negligence, negligent misrepresentation, breach of oral contract,

9    and reformation based on the actions of JKG and Gill as agents of Grange.

10        On March 1, 2016, Plaintiff filed a motion for partial summary judgment.  (ECF No. 40.)

11   On March 16, 2016, Sran and Fisher filed oppositions.  (ECF Nos. 42, 44.)  Plaintiff filed replies

12   to Sran's and Fisher's oppositions on March 23, 2016.  (ECF Nos. 46, 47.)  On March 25, 2016,

13   Sran filed a motion to strike new material and new argument advanced in Plaintiff's reply brief.

14   (ECF No. 48.)

15        The claims in the Fisher Action concern whether the manner in which Sran hauled the

16   trailer was negligent by loading a trailer which did not have operating brake lights and loading

17   the forklift in a manner which obscured vision of the truck's brake lights.

18        The parties agree that Sran was hauling a trailer and forklift with his truck when the

19   accident occurred.  The parties agree that Sran's Ford F250 pickup truck involved in the accident

20   was a "motorized vehicle" under the "motorized vehicle" exclusion and Exclusion e and that the

21   "forklift" is "mobile equipment."  The parties agree that bodily injury or property damage arising

22   out of "mobile equipment" is excluded from Exclusion e of the FarmPak policy.

## II.

### SUMMARY JUDGMENT STANDARD

25        Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ...

26   if the movant shows that there is no genuine dispute as to any material fact and the movant is

27   entitled to judgment as a matter of law."  Summary judgment must be entered "against a party

28   who fails to make a showing sufficient to establish the existence of an element essential to that

3

party's case..." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u>

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.

## III.

## UNDISPUTED FACTS

1.     A motor vehicle accident occurred on November 22, 2014, on state route 180 in Fresno County ("the accident").

2.     At the time of the accident, Sran was operating a 2003 Ford 250 truck and attached trailer.

3.     At the time of the accident, Sran was the owner of the 2003 Ford 250 truck, attached trailer and forklift.

4.     Sran was operating the Ford truck and trailer in the eastbound no. 1 lane of Whitesbridge Avenue and was either slowing or stopped to make a left hand turn into the driveway of his residence at the time of the accident.

5.     The Ford truck and trailer were carrying a forklift at the time of the accident.

6.     While Sran was operating his truck and trailer carrying the forklift, Jennifer Fisher struck the rear of the trailer and sustained fatal injuries.

7.     As a result of the accident, a Complaint and First Amended Complaint were filed in Fresno County Superior Court in the <u>Fisher</u> Action.

1     8.     The Fisher Action alleges claims for the wrongful death of Jennifer Fisher, the

2  mother of Caeden Fisher.

3     9.     A First Amended Complaint has been filed in the Fisher Action.

4     10.    Grange issued the FarmPak policy to Sran for the policy period April 23, 2014 to

5  April 23, 2015.

6     11.    Grange issued the Excess Policy to Sran for the policy period November 21, 2014

7  to April 23, 2015.

8     12.    Sran tendered the defense of the Fisher Action to Grange.

9     13.    Grange has accepted the defense of Sran in the Fisher Action under a reservation

10  of rights.

11    14.    Sran also tendered the defense of the Fisher Action to his automobile insurance

12  carrier, CSAA Insurance Exchange.

13    15.    CSAA Insurance Exchange has accepted the defense of Sran in the Fisher Action.

14    16.    In the Fisher Action, plaintiff alleges: "…Sran loaded the forklift onto the trailer

15  with full knowledge and awareness that the large forklift would and did in fact block the truck's

16  brake lights from the vision of approaching motorists when he operated the truck and trailer on

17  the roadway."

18    17.    The Complaint was filed in this matter on April 2, 2015.

19    18.    The First Cause of Action in the Complaint is for Declaratory Relief and seeks a

20  judicial declaration as to whether the FarmPak Policy has a duty with regard to the Fisher

21  Action.

22    19.    The Second Cause of Action in the Complaint is for Declaratory Relief and seeks

23  a judicial declaration as to whether the Excess Policy has a duty with regard to the Fisher Action.

24    20.    On June 11, 2015, Sran filed "Defendant Gulzar Sran's Answer to Complaint"

25  ("Answer").

26    21.    On April 23, 2015, an "Offer to Compromise Pursuant to CCP § 998 and Notice

27  of Acceptance" was served by Fisher on Sran in the Fisher Action (§ 998 Offer").

28    22.    In response to the § 998 Offer, CSAA offered its $500,000 policy limits.

23.     The FarmPak Plus Farming and Personal Liability Insurance Policy ("FarmPak policy") contains the following exclusions e. and g.:

2.      Exclusions
This insurance does not apply to:

. . .

e.      Aircraft, Hovercraft or **Motorized Vehicles Bodily Injury** or **property damage** arising out of:

(1)     Ownership of any aircraft, hovercraft or **motorized vehicle** by an insured; or

(2)     Maintenance, use, operation or **loading or unloading** of any aircraft, hovercraft or **motorized vehicle**;

(3)     Entrustment of any aircraft, hovercraft or **motorized vehicle** by an insured to any person;

(4)     Failure to supervise or negligent supervision of any person involving any aircraft, hover-craft or **motorized vehicle** by an insured; or

(5)     Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving any aircraft, hovercraft or **motorized vehicle**.

This exclusion applies even if the claims against an insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, hovercraft, or **motorized vehicle** that is owned or operated by or rented or loaned to an insured.

This exclusion does not apply to:

(1)     An aircraft or hovercraft that causes **bodily injury** or **property damage** to a **residence employee** who is not operating or maintaining it.

(2)     Model or hobby aircraft unless used or designed to carry an operator(s), any other person(s) or cargo.

(3)     Parking a **motorized vehicle** on the ways next to an **insured location**, provided the **motorized vehicle** is not owned by or rented or loaned to an insured.

(4)     A **motorized vehicle** while on an insured location;

(5)     A **motorized vehicle** exclusively used as a device for assisting the handicapped;

(6)     **Bodily injury** or **property damage** arising out of:
(a)     **Mobile Equipment**;
(b)     The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to motor vehicle licensing and registration or a

6

compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (c)    The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of **mobile equipment**.

(6)    A **motorized vehicle**:

    (a)    Designed for recreational use off public roads; and

    (b)    Not licensed for road use; and

    (c)    Not owned by an insured.

(7)    A motorized golf cart, designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **occurrence**, is within the legal boundaries of:

    (a)    A golfing facility and is parked or stored there, or being used by an insured to:

        (i)    Play the game of golf or for other recreational or leisure activity allowed by the facility;

        (ii)    Travel to or from an area where golf carts are parked or stored; or

        (iii)    Cross public roads at designated points to access other parts of the golfing facility; or

    (b)    A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an insured's residence.

. . .

g.    **Mobile Equipment**, Contests and Livestock
    **Bodily injury** or **property damage** arising out of:

(1)    The transportation of **mobile equipment** by a **motorized vehicle** owned or operated by, or rented or loaned to, an insured;

(2)    The use of any self-propelled land vehicle, or **mobile equipment** in, or in practice or preparation for, a prearranged racing, speed, strength, or demolition contest or in any stunting activity;

(3)    The use of any livestock or other animal in, or while in practice or preparation for, any prearranged racing speed or strength con- test, or prearranged stunting or rodeo activity; or

(4)    The use of any livestock or other animal, with or without an accessory vehicle, for providing rides to any person for a fee.

24. The FarmPak policy contains the following definitions:

14. **Loading or unloading** means the handling of property:

    a.    After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **motorized vehicle**;

    b.    While it is in or on an aircraft, watercraft or **motorized vehicle**; or

    c.    While it is being moved from an aircraft, watercraft or **motorized vehicle** to the place where it is finally delivered.

But **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **motorized vehicle.**

15. **Mobile equipment** means the following, including any attached machinery or equipment:

    a.    Bulldozers, forklifts and tractors designed for use principally off public roads;

    b.    Motorized vehicles:

        (1)    Designed for use principally off public roads as implements for cultivating or harvesting; and

        (2)    Not subject to motor vehicle licensing, registration or a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged;

    c.    Vehicles that travel on crawler treads, except snowmobiles.

    d.    Vehicles whether self propelled or not, on which are permanently mounted:

        (1)    Power cranes, shovels, loaders, diggers or drills; or

        (2)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.    Vehicles not described in a., b., c., d. or e above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2)    Cherry pickers and similar devices used to raise or lower workers;

    f.    Vehicles not described in a., b., c., d or e. above that are maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types

of permanently attached equipment are not mobile equipment but will be considered **motorized vehicles**:

    (1)    Equipment designed primarily for:
            (a)    Road maintenance, but not construction or resurfacing; or
            (b)    Street cleaning;
    (2)    Cherry pickers and similar devices mounted on automobile or truck chassis  and used to raise or lower workers; and
    (3)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    16.    **Motorized vehicle** means:
        a.    A self-propelled land vehicle;
        b.    Any machinery or equipment, trailer or semi-trailer attached to a vehicle included in a.;
        c.    Any vehicle, including any attached machinery or equipment, while being towed by or carried on a vehicle included in a. or b.

25.    The Excess policy contains the following exclusion from coverage:

This insurance does not apply to:

    1.    The ownership of any motor vehicle, motorized bicycle or tricycle by any insured; or
    2.    Maintenance, use, operation or loading or unloading of any  motor vehicle, motorized bicycle or tricycle by any insured or other person.

This exclusion does not apply to:

    a.    Parking a motor vehicle or motorized bicycle or tricycle on, or on the ways next to, premises you own or rent, provided the motor vehicle, motorized bicycle or tricycle is not owned by or rented or loaned to an Insured.
    b.    A motor vehicle not subject to motor vehicle licensing by reason of:
        i. Its use exclusively at the insured location.
        ii. Its being kept in dead storage at the insured location; or
        iii. Its exclusive use as a device for the handicapped.
    c.    A licensed recreational motor vehicle owned by an insured, provided the occurrence takes place on the insured location.
    d.    Bodily injury or property damage arising out of the operation of vehicle mounted:
        i.    cherry pickers and similar devices used to raise or lower workers; and
        ii.    air compressors, pumps and generators, including spraying, welding, building

cleaning geo-physical exploration, lighting and well servicing equipment.

For the purpose of this exclusion:

1.  Loading or unloading means the handling of property:
    a.  after it is moved from the place where it is accepted for movement into or onto a motor vehicle;
    b.  while it is in or on a motor vehicle;
    c.  while it is being moved from a motor vehicle to the place where it is finally delivered; but loading or unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the motor vehicle.

2.  Mobile equipment means the following, including any attached machinery or equipment:
    a.  Bulldozers, forklifts and tractors designed for use principally off public roads;
    b.  Other farm machinery designed for use:
        i.   Principally off public roads; and
        ii.  As Implements for cultivating or harvesting.
    c.  Vehicles that travel on crawler treads, except that snowmobiles are mobile equipment only while on an insured location or any premises you own or rent.
    d.  Vehicles, whether self-propelled or not, on which are permanently mounted:
        i.   Power cranes, shovels, loaders, diggers or drills; or
        ii.  Road construction or resurfacing equipment such as graders, scrapers or rollers;
    e.  Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
        i.   Air Compressors, pumps and generators, including spraying, welding, building-cleaning geo-physical exploration, lighting and well-servicing equipment; or
        ii.  Cherry pickers and similar devices used to ra1se or lower workers;
    f.  Vehicles not described in a., b., c. or d. above that are maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered motor vehicles:

i.     Equipment designed primarily for:
     (a)    Road maintenance, but not construction or resurfacing; or
     (b)    Street-cleaning;
ii.    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
iii.   Air compressors, pumps and generators, including spraying, welding, building-cleaning, geo-physical exploration, lighting and well-servicing equipment

3.    Motor vehicle means:
    a.    A motorized land vehicle, trailer or semi-trailer and any machinery or equipment while attached to or being carried or towed by such vehicles;
       i.    designed for use on public roads; or
       ii.   used on public roads unless it qualifies as mobile equipment.

26.    The Eleventh Affirmative Defense in the Answer alleges that Grange is not entitled to relief sought in the Complaint because Grange breached its obligation of good faith and fair dealing.

27.    The FarmPak Policy contains a "Motorized Vehicles Used for Farming Purposes" endorsement, which enlarges the definition of "mobile equipment" in the policy to include "farm vehicles" while being "used for farming purposes at an **insured location** or while being operated over public roads between farm locations within a 15-mile radius of an insured location." The endorsement defines "farm vehicle" to mean:

any vehicle other than a farm tractor or farm implement which is exempt from motor   vehicle licensing or registration requirements, which is used solely in agricultural pursuits on farms for the purpose of transporting machinery, equipment, implements, farm products, supplies or farm labor and which is only incidentally operated on or moved along public roads for the purpose of going from one farming location to another.

## IV.

## SUMMARY OF ARGUMENTS

Plaintiff argues that there is no coverage under the terms of the FarmPak and Excess

1   policies for the claims in the <u>Fisher</u> Action because the Ford truck and the attached flatbed trailer

2   fall within the definition of "motorized vehicle," and therefore, fall within the motorized vehicle

3   exclusion.  Plaintiff also argues that Sran was transporting "mobile equipment" when he was

4   transporting the forklift with his truck, which Plaintiff argues is excluded.  Plaintiff contends that

5   when the only way the underlying plaintiff is exposed to a risk is through the operation or use of

6   a motor vehicle, then there is no coverage under a general liability policy.  Specifically, Plaintiff

7   argues that there is no coverage because of "Exclusion e" and "Exclusion g" of the FarmPak

8   policy and the "Motor Vehicle Exclusion" of the Excess policy.

9          Sran and Fisher counter that the loading of the forklift is distinct from the transportation

10   of the forklift and that the loading of the forklift is covered under the FarmPak and Excess

11   policies.  They also assert that the concurrent cause doctrine applies in this case and that there is

12   coverage because of the concurrent causes of the accident.  Sran and Fisher also argue that the

13   "motorized vehicle used for farming purposes" endorsement amends the definition of "mobile

14   equipment" to include the trailer, and that the use and operation therefore, is covered under the

15   FarmPak policy and Excess policy.  The parties agree that the "motorized vehicles used for

16   farming purposes" endorsement expands the definition of "mobile equipment."  If the trailer is

17   "mobile equipment," as Fisher and Sran argue, Sran was using "mobile equipment" at the time of

18   the accident, because he was using the trailer.

19          In response to Sran and Fisher's arguments, Plaintiff argues that the trailer does not fall

20   within the "motorized vehicles used for farming purposes" endorsement because of the language

21   of the that endorsement.  Plaintiff also argues that the "motorized vehicles used for farming

22   purposes" endorsement is not part of the Excess policy.  Plaintiff asserts that the loading of the

23   forklift onto the trailer was the loading of a motor vehicle, which is excluded from coverage.

24   Plaintiff argues that even if the loading of the forklift onto the trailer was covered under the

25   FarmPak or Excess policies, the concurrent cause doctrine does not apply to this matter, so there

26   is no coverage under the FarmPak and Excess policies.

27          Additionally, Plaintiff seeks summary judgment on the Eleventh Affirmative Defense.  In

28   Sran's answer, he asserts an affirmative defense of good faith and fair dealing for his Eleventh

1   Affirmative Defense.   Plaintiff contends that summary adjudication is appropriate on the

2   Eleventh Affirmative Defense because it has not withheld benefits and any reason for

3   withholding benefits would not be unreasonable or without proper cause.   Plaintiff asserts that he

4   accepted Sran's tender of the defense in the underlying <u>Fisher</u> Action and provided Sran with

5   two counsel.   Plaintiff also argues that there is a genuine dispute between Sran and Plaintiff as to

6   coverage for Sran in the <u>Fisher</u> Action.   Sran and Fisher argue that it is premature to decide this

7   motion for summary judgment.

8                                                   **V.**

9                                              **ANALYSIS**

10      **A.      Prematurity of Motion for Partial Summary Judgment**

11              First, the Court will address Fisher and Sran's argument that this motion for summary

12   judgment is premature.   Fisher argues that the non-moving party should be allowed to conduct

13   discovery before having to oppose a motion for summary judgment.   Fisher has not yet

14   conducted any significant discovery in this case.

15              Fisher's counsel stated in a declaration that he had not pursued any discovery in

16   connection with the issues raised in this action because of an understanding that was reached

17   with Plaintiff's prior counsel to hold off on discovery until new counsel associated into the

18   action.   On October 19, 2015, Sran's counsel first learned that Plaintiff's counsel intended to

19   retire.   Plaintiff argues that there is no explanation as to why Sran's counsel did not serve

20   discovery between April 2, 2015, when the complaint was filed, and October 19, 2015, the date

21   that Sran learned Plaintiff's counsel intended to retire.   On December 23, 2015, the Court entered

22   an order substituting Plaintiff's current counsel as attorney of record for Plaintiff.   (ECF No. 35.)

23   Plaintiff further contends that Sran was aware as early as January 12, 2016, that Plaintiff

24   intended to file a motion for partial summary judgment and the basis for the motion.   Plaintiff

25   argues that Sran has given no explanation as to why no discovery was served until February 19,

26   2016.   On March 1, 2016, Plaintiff filed a motion for partial summary judgment.

27              Fisher wants to obtain production of Plaintiff's complete underwriting file, underwriting

28   manual, and underwriting guidelines and/or procedures.   Fisher wants to conduct a deposition of

1    Plaintiff's person most knowledgeable regarding its underwriting practices, the underwriting

2    manual, the issuance of applicable policies, and the relationship between Plaintiff and its

3    wholesale broker.  Fisher also wants to conduct a deposition of any underwriter involved with

4    the procurement or issuance of the policies to Sran, the retail agent, and wholesale broker.

5         The Court finds that the matters that Sran and Fisher seek discovery on are relevant to

6    Sran's counterclaim and third party complaint, which raise claims of negligence, negligent

7    misrepresentation, breach of contract, reformation, equitable indemnity, and equitable

8    contribution, which are all brought to the extent that the Court finds no coverage under the

9    FarmPak or Excess policies.

10        1.   First and Second Causes of Action

11        Fisher and Sran argue that Plaintiff is unable to prevail on its summary judgment motion

12   because of the Eighth Affirmative Defense of estoppel.  Fisher and Sran argue that adjudication

13   of the instant summary judgment motion is premature because they need to conduct discovery on

14   the Eighth Affirmative Defense.  Plaintiff argues that coverage cannot be created by estoppel, so

15   the Eighth Affirmative Defense will not actually create coverage, and therefore, the Court can

16   determine whether there is coverage under the FarmPak and Excess policies.

17        In Advanced Network, Inc. v. Peerless Insurance Company, 190 Cal.App.4th 1054, 1066

18   (2010), the California Court of Appeal, Fourth District stated:

19            [I]t is the general and quite well settled rule of law that the
             principles of estoppel and implied waiver do not operate to extend
20           the coverage of an insurance policy after the liability has been
             incurred or the loss sustained.  (Id. at pp. 652-653; see Miller v.
21           Elite Ins. Co. (1980) 100 Cal.App.3d 739, 755 ["Estoppel cannot
             be used to create coverage under an insurance policy where such
22           coverage did not originally exist."]; Supervalu, Inc. v. Wexford
             Underwriting Managers, Inc. (2009) 175 Cal.App. 4th 64, 77
23           ["Supervalu is asserting estoppel to expand coverage under the
             policies, which is impermissible, rather than to simply avoid a
24           forfeiture of benefits."].)  "[T]here is a definite distinction between
             the waiver of a right to declare a forfeiture, to cancel or to rescind
25           based upon some breach of a condition of the policy on the one
             hand and the extension of coverage provided by the policy on the
26           other." (Insurance Co. of North America v. Atlantic National Ins.
             Co. (4th Cir.1964) 329 F.2d 769, 775.)

27

28        Sran and Fisher propose to create coverage through estoppel, which is not permissible.

See Advanced Network, Inc., 190 Cal.App.4th at1066; Supervalu, Inc. v. Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64, 77 (2009), as modified (June 24, 2009). The Court can determine whether there is coverage under the terms of the FarmPak and Excess policies without considering the defense of estoppel. Therefore, at this time, the Court can determine whether there is coverage under the terms of the FarmPak and Excess policies.

Plaintiff seeks summary judgment on whether there is coverage under the FarmPak and Excess policies and whether Plaintiff has an obligation to defend or indemnify Sran with respect to the Fisher Action, which are the First and Second Causes of Action. If the Court determines that there is no coverage under the FarmPak or Excess policies, Plaintiff does not have to defend or indemnify Sran under that policy.

The Court finds that it is not premature to determine whether there is coverage under the terms of the FarmPak and Excess policies with respect to the Fisher Action and whether Plaintiff has to defend or indemnify Sran with respect to the Fisher Action. Therefore, the Court addresses whether Plaintiff has met its burden for establishing that there is no coverage under the terms of the FarmPak policy (First Cause of Action) and Excess policy (Second Cause of Action) for the Fisher Action.

2. Eleventh Affirmative Defense

Sran argues that it is premature to address the affirmative defense of good faith and fair dealing. At the hearing, both parties agreed that Sran may bring an affirmative defense of good faith and fair dealing. Sran argued that the affirmative defense of good faith and fair dealing is applicable when a plaintiff improvidently files an action for declaratory relief or when a plaintiff does not conduct a reasonable investigation, citing Wilson v. 21st Century Ins. Co., 42 Cal.4th 713, 723 (2007). Plaintiff did not contest that the affirmative defense of good faith and fair dealing may be applicable in such circumstances.

An affirmative defense absolves a defendant of liability "even where the plaintiff has stated a prima facie case for recovery." Quintana v. Baca, 233 F.R.D. 562, 564 (C.D. Cal. 2005). Generally, when good faith and fair dealing is asserted as a claim, "a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was

unreasonable or without proper cause." Love v. Fire Ins. Exch., 221 Cal.App.3d 1136, 1151 (1990). Adjudication of a claim for bad faith is appropriate on summary judgment "so long as there existed a genuine issue as to the insurer's liability." Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001); Franceschi v. American Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988). In Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 36 (1995), the California Supreme Court held that "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because they frustrate the insured's right to receive the benefits of the contract in prompt compensation for losses."

Although Plaintiff has provided Sran with counsel in the underlying Fisher Action, that is not enough for Plaintiff to be granted summary judgment on this affirmative defense. As discussed infra, the Court finds that there is no coverage under the terms of the Excess policy. However, at this time, there is a reasonable dispute of material fact about whether Sran is covered under the FarmPak policy for the Fisher Action. Also, whether Plaintiff conducted a reasonable investigation into the coverage is relevant to resolution of this issue. At this time, it is premature to adjudicate this affirmative defense because Sran has not had the opportunity to conduct discovery regarding the reasonableness of the investigation into coverage. Accordingly, at this time, Plaintiff is not entitled to summary judgment on Sran's Eleventh Affirmative Defense that Plaintiff breached its obligation of good faith and fair dealing. Therefore, summary judgment on the Eleventh Affirmative Defense will be denied.

## B. Coverage Under the FarmPak Policy (First Cause of Action)

The Court next addresses whether it is an established fact as part of the First Cause of Action that there is no coverage under the FarmPak policy for the claims asserted in the Fisher Action. The first main issue to be addressed is whether the relative clause in the "motorized vehicles used for farming purposes" endorsement—"which is exempt from motor vehicle licensing or registration requirements"—applies to "any vehicle" or "farm tractor or farm implement." The FarmPak and Excess policies provide for coverage for a variety of circumstances. However, there are exclusions and endorsements in both the FarmPak and

Excess policies.  An exclusion or endorsement can modify the printed terms of a policy and it prevails over any conflicting provisions in the body of the policy.  Haynes v. Farmers Ins. Exch. 32 Cal.4th 1198, 1208 (2004).

The "motorized vehicles used for farming purposes" endorsement states:

> 1.    Definition 15. **Mobile Equipment,** in SECTION V – DEFINITIONS is amended to include the following:
> h. **Farm Vehicles** while being used for farming purposes at an **insured location** or while being operated over public roads between farm locations within a 15-mile radius of an insured location.
>
> 2.  The following definition is added to SECTION V – DEFINITIONS:
> **Farm vehicle** means any vehicle other than a farm tractor or farm implement which is exempt from motor vehicle licensing or registration requirements, which is used solely in agricultural pursuits on farms for the purpose of transporting machinery, equipment, implements, farm products, supplies or farm labor and which is only incidentally operated on or moved along public roads for the purpose of going from one farming location to another.

The "motorized vehicles used for farming purposes" endorsement amends the definition of mobile equipment in SECTION V - DEFINITIONS to include farm vehicles and adds a definition of farm vehicles to SECTION V - DEFINITIONS.  The parties disagree regarding whether Sran's trailer qualifies as a farm vehicle under the definition set forth in the "motorized vehicles used for farming purposes" endorsement.

The parties dispute whether the relative clause in the definition of farm vehicle—"which is exempt from motor vehicle licensing or registration requirements"—applies to "any vehicle" or "farm tractor or farm implement."  It is clear to the Court that the phrase "which is exempt from motor vehicle licensing or registration requirements" does not apply to both "any vehicle" and "farm tractor or farm implement," so the issue is to which term it applies.  Grange argues that "which is exempt from motor vehicle licensing or registration requirements" applies to "any vehicle," and Sran argues that it applies to "farm tractor or farm implement."  Section 4000 of the California Vehicle Code subjects trailers to motor vehicle registration.  Cal. Veh. Code § 4000.  Therefore, if Plaintiff's interpretation is correct, the trailer cannot be a farm vehicle and cannot qualify for the motorized vehicles used for farming purposes endorsement.

17

As this is a diversity case, and as the parties agree, the Court applies California substantive law.  Under California law, "interpretation of an insurance policy is a question of law."  Waller v. Truck Ins. Exch., Inc., 11 Cal.4th at 18 (citing AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 818 (1990)); see also State Farm Fire & Casualty Co. v. Lewis, 191 Cal.App.3d 960, 963 (1987) ("The interpretation of an insurance policy, like any other contract, is a matter of law as to which a reviewing court must make its own independent determination").  "[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted against the insurer."  MacKinnon v. Truck Ins. Exch., 31 Cal.4th 635, 648 (2003) (citation, internal quotations marks omitted); see also Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 951 (9th Cir. 2002) (claims are construed liberally to determine whether they are covered by an insurance policy).

When interpreting the language of an insurance policy, the Court "should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary." Giddings v. Industrial Indemnity Co., 112 Cal.App.3d 213, 218 (1980).  If a policy language is "clear and explicit, it governs."   Bank of the West v. Superior Court, 2 Cal.4th 1254, 1264 (1992).  "When interpreting a policy provision, [courts] must give its terms their ordinary and popular sense unless used by the parties in a technical sense or a special meaning is given to them by usage.  We must also interpret these terms in context, and give effect to every part of the policy with each clause helping to interpret the other.  Palmer v. Truck Ins. Exchange, 21 Cal.4th 1109, 1115 (1999) (quotations and citations omitted).  "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.  But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract."  Waller, 11 Cal.4th at 18.

Rules of grammar and punctuation can also be used in deciding the meaning of words and phrases.  See Oak Park Calabasas Condominium Assn. v. State Farm Fire and Cas. Co., 137 Cal.App.4th 557, 564 (using the grammatical use of a comma to determine the meaning of an insurance policy provision); State Farm General Ins. Co. v. JT's Frames, Inc., 181 Cal.App.4th 429, 446 (2010) (applying the "rule of the last antecedent" to determine the scope of a policy

1   provision).  The Supreme Court applied a "rule of the last antecedent" when interpreting a statute

2   that includes a list of terms or phrases followed by a limiting clause.  <u>Barnhart v. Thomas</u>, 540

3   U.S. 20, 26 (2003).  Although this "rule of last antecedent" was set out by the Supreme Court in

4   the context of statutory interpretation, it is a grammatical rule that also applies to the grammar of

5   a sentence in a contract.  The "rule of the last antecedent" is that "a limiting clause or phrase…

6   should ordinarily be read as modifying only the noun or phrase that it immediately follows."

7   <u>Barnhart</u>, 540 U.S. at 26 (citing 2A N. Singer, Sutherland on Statutory Construction § 47.33, p.

8   369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary

9   intention  appears,  refer  solely  to  the  last  antecedent")).    However,  the  "rule  of  the  last

10  antecedent" can be overcome by other indicia of meaning.  <u>Barnhart</u>, 540 U.S. at 26; <u>Davis v.</u>

11  <u>Michigan Dept. of Treasury</u>, 489 U.S. 803, 809 (1989).

12          In his opposition to Plaintiff's motion for summary judgment, Sran placed parenthesis

13  around "other than a farm tractor or farm implement which is exempt from motor vehicle

14  licensing or registration requirements."  (ECF No. 44 at 22.)  However, parentheses are not

15  around "other than a farm tractor or farm implement which is exempt from motor vehicle

16  licensing or registration requirements."  (ECF No. 40-6 at 7.)  The Court finds that "which is

17  exempt from motor vehicle licensing or registration requirements" applies to "other than a farm

18  tractor or farm implement," and not "any vehicle."

19          Based on the "rule of the last antecedent" "other than a farm tractor or farm implement"

20  is the antecedent immediately preceding "which is exempt from motor vehicle licensing or

21  registration requirements."  Also, there is nothing from the indicia of the meaning of the sentence

22  that  clearly  points  to  "which  is  exempt  from  motor  vehicle  licensing  or  registration

23  requirements" applying to "any vehicle."  Further, two other "which" clauses exist in that same

24  sentence which qualify "any vehicle."  Therefore, it is possible that the trailer falls within the

25  definition of "farm vehicle" in the "motorized vehicles used for farming purposes" endorsement

26  if the trailer is used solely in agricultural pursuits on farms for the purpose of transporting

27  machinery, equipment, implements, farm products, supplies or farm labor and which is only

28  incidentally operated on or moved along public roads for the purpose of going from one farming

1    location to another.  If the trailer falls within the definition of "farm vehicle," then the trailer may

2    qualify as mobile equipment.  The endorsement prevails over any conflicting provisions in the

3    body of the policy, including the definition of motorized vehicle in the FarmPak policy.  See

4    Haynes v. Farmers Ins. Exch. 32 Cal.4th at 1208.

5        The "motorized vehicles used for farming purposes" endorsement is part of the FarmPak

6    policy.  (ECF No. 40-6.)  The act of towing the trailer behind the pickup was a use of the trailer.

7    See Smith v. Travelers Indemnity Co., 32 Cal.App.3d 1010, 1015 (1973); St. Paul Fire & Marine

8    Ins. Co. v. Hartford Acc. & Indem. Co., 244 Cal.App.2d 826, 831-32 (1966).  Based on the facts

9    presently before the Court, the trailer may be covered by the FarmPak policy.

10       However, Plaintiff argues that even if the trailer falls within the "motorized vehicles used

11   for farming purposes" endorsement, the risk associated with the use of the trailer is not covered

12   by the FarmPak policy because the accident involved the use and operation of a motor vehicle.

13   Sran argues that the FarmPak policy covers the use of the trailer because an accident that

14   involves the use of a motor vehicle and an attached trailer is covered under the trailer's

15   insurance.

16       In Smith, the California Court of Appeal determined that an accident involving a pickup

17   and attached horse trailer arose out of the use of the trailer and that the negligent operation of the

18   combined pickup and trailer caused the accident.   Smith v. Travelers Indemnity Co., 32

19   Cal.App.3d at 1015.  Here, the use of the trailer combined with the use of the Ford truck, a motor

20   vehicle, potentially results in coverage under the FarmPak policy if the trailer is covered.

21       Based on the facts presently before the Court, the trailer may be covered by the FarmPak

22   policy.  Plaintiff has not met his burden of showing an absence of dispute as to a material fact

23   that there is no coverage under the FarmPak policy for the Fisher Action.  Accordingly, Plaintiff

24   is denied summary judgment on the First Cause of Action.

25       **C.      Coverage Under the Excess Policy (Second Cause of Action)**

26       Next the Court whether there is an established fact that there is no coverage under the

27   Excess policy for the claims asserted in the Fisher Action as alleged in the Second Cause of

28   Action.

1          1.      "Motorized Vehicles Used for Farming Purposes" Endorsement

2          Sran and Fisher argue that there is coverage under the Excess policy because the trailer

3    falls within the "motorized vehicles used for farming purposes" endorsement.  As discussed

4    above, the Court finds that it is possible that the trailer falls within the "motorized vehicles used

5    for farming purposes" endorsement, and therefore it is possible that the trailer is "mobile

6    equipment" under the definition for "mobile equipment" in SECTION V – DEFINITIONS in the

7    FarmPak.  However, Plaintiff argues that the "motorized vehicles used for farming purposes"

8    endorsement is only part of the FarmPak policy, and is not expressly part of the Excess policy.

9    Sran and Fisher argue that the "motorized vehicles used for farming purposes" endorsement was

10   made a part of the Excess policy.  (ECF No. 40-6.)

11         The Excess policy states:

12         **LIABILITY COVERAGE**

13         In return for the payment of the premium we agree to pay, on
           behalf of an insured, damages for bodily injury, personal injury,
14         property damage or advertising injury which an insured is legally
           obligated to pay in excess of the total Limits of Liability of
15         Underlying Insurance as stated in the Schedule of Underlying
           Insurance.  The terms and conditions of the Scheduled Underlying
16         Insurance are made a part of this policy, except for:

17                  a.      any definition, term, or condition therein relating to:
                            any duty to investigate and defend, the Limits of
18                          Liability, premium, cancellation, other insurance,
                            our right to recover payment, or
19
                    b.      any renewal agreement, and any exclusion or
20                          limitation attached to this policy by endorsement or
                            included in the Exclusions of this policy.
21
           With respect to a. and b. above, the provisions of this policy will
22         apply.

23         The injury or damage must be caused by an occurrence or offense
           which takes place during the policy period.
24

25         The California Supreme Court has recognized that "[a]n excess policy generally follows

26   the form of the underlying primary coverage and is called 'following form' excess coverage, i.e.,

27   *the excess has the same scope of coverage as the primary policy.*"  Coca Cola Bottling Co. v.

28   Columbia Cas. Ins. Co., 11 Cal. App. 4th 1176, 1182-83 (1992) (citing Vol. 1 *Cal. Liability*

                                                    21

*Insurance Practice: Claims & Litigation,* § 1.5, p. 1–5 (italics added)).  However, here, as stated in the Liability Coverage section of the Excess policy, the Excess policy does not follow the exact form of the FarmPak policy.  There are several terms and conditions of the FarmPak policy that are not made a part of the Excess policy.  "The terms and conditions of the [FarmPak policy] are made a part of [the Excess policy], except for…any exclusion or limitation attached to the [Excess policy] by endorsement or included in the Exclusions of this policy."  (Farm & Commercial Excess Liability Insuring Agreement, ECF No. 40-6 at 38.)

The Excess policy has its own motor vehicle exclusion.  Therefore, the Excess policy's motor vehicle exclusion is the motor vehicle exclusion that is expressly in the Excess policy (EL10020196) instead of the motor vehicle exclusion from the FarmPak policy.  The motor vehicle exclusion in the Excess policy also states its own definitions for "mobile equipment," loading or unloading, and motor vehicle for the purposes of that exclusion.  (ECF No. 40-6 at 43-44.)  Therefore, the Court finds that since the Excess policy has its own definition of "mobile equipment," the definition for "mobile equipment" that is in SECTION V – DEFINITIONS of the FarmPak policy does not apply to the motor vehicle exclusion in the Excess policy.

The "motorized vehicles used for farming purposes" endorsement amends the definition of "mobile equipment" in SECTION V - DEFINITIONS to include farm vehicles and adds a definition of farm vehicles to SECTION V - DEFINITIONS.  The "motorized vehicles used for farming purposes" endorsement in the FarmPak policy does not amend the definition of "mobile equipment" in the motor vehicle exclusion in the Excess policy.  There is nothing in the motor vehicle exclusion that states that the "motorized vehicles used for farming purposes" endorsement in the FarmPak policy applies to that exclusion.

Therefore, the Court finds that the "motorized vehicles used for farming purposes" endorsement is not part of the Excess policy.  The Court next discusses whether the loading of the forklift onto the trailer is covered under the Excess policy.

2.   Loading of the Forklift

Plaintiff also argues that the loading of the trailer is excluded under the Excess policy, and that therefore, there is no coverage for the act of loading the forklift onto the trailer under the

Excess policy.  Sran and Fisher argue that the forklift being loaded is loading of a forklift, so the exclusion for loading of any motor vehicle does not apply for the act of loading the forklift onto the trailer.  Under Sran and Fisher's theory of loading of a forklift, the loading of a motor vehicle would be the act of the loading the motor vehicle onto some other object or place.

The Motor Vehicle Exclusion in the Excess policy states:

> Loading or unloading means the handling of property:
> a.  after it is moved from the place where it is accepted for movement into or onto a motor vehicle;
> b.  while it is in or on a motor vehicle;
> c.  while it is being moved from a motor vehicle to the place where it is finally delivered; but loading or unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the motor vehicle.

As discussed below, the Excess policy does not include the "motorized vehicles used for farming purposes" endorsement.  Since the "motorized vehicles used for farming purposes" endorsement does not apply to the Excess policy, the trailer is a "motor vehicle."  The Excess policy does not apply to "[m]aintenance, use, operation or loading or unloading of any motor vehicle."  (ECF No. 40-6 at 43.)  A motor vehicle is defined as:

> a.  A motorized land vehicle, trailer or semi-trailer and any machinery or equipment while attached to or being carried or towed by such vehicles;
> i.  designated for use on public roads; or
> ii.  used on public roads
>      unless it qualifies as mobile equipment.

Here, the trailer does not qualify as mobile equipment under the Excess policy.  Therefore, the use and operation of the trailer are excluded from coverage under the Excess policy.  The Court finds that based on the plain language of the Excess policy, loading of any motor vehicle is excluded under the Excess policy.  The Court finds that the act of loading of a motor vehicle means loading into or onto a motor vehicle.  Therefore, the loading of the forklift onto the trailer is excluded under the Excess policy.

However, even if loading the forklift is covered under the Excess policy, the Court finds

1  that the concurrent cause doctrine does not apply as discussed below.

2         3.      Concurrent Cause Doctrine

3         In their oppositions to Plaintiff's motion for summary judgment, Sran and Fisher argue

4  that the concurrent cause doctrine applies to this case and that there is coverage under the Excess

5  Policy for the Fisher Action if the loading the forklift is covered under the Excess policy.

6  Plaintiff argues that there would not be coverage for the claims in the Fisher Action because the

7  concurrent cause doctrine does not apply to this matter.

8         The concurrent cause doctrine results in liability for the insurer where there is an insured

9  risk and an excluded risk that are concurrent, proximate causes of injury.  See State v. Allstate

10 Ins. Co., 45 Cal.4th 1008, 1032 (2009).  The parties agree that the use of the Ford truck was the

11 use of a motor vehicle, which is excluded under the Excess policy.  As discussed above, the

12 Court finds that the "motorized vehicles used for farming purposes" endorsement does not apply

13 to the Excess policy.  Therefore, the Court finds that the trailer falls within the definition of

14 "motor vehicle" for the motor vehicle exclusion in the Excess policy.  The "maintenance, use,

15 operation or loading or unloading of any motor vehicle" is excluded from coverage in the Excess

16 policy.

17        Plaintiff argues that the concurrent cause doctrine does not apply to the facts of the

18 instant case because the loading of the forklift is connected to the use of the Ford truck.  Sran and

19 Fisher argue that the concurrent cause doctrine applies, because there could have been an

20 accident as a result of Sran's alleged negligence in loading the forklift even if there was no use of

21 a motor vehicle.

22        The leading case for concurrent cause doctrine is State Farm Mut. Auto. Ins. Co. v.

23 Partridge, 10 Cal.3d 94 (1973) ("Partridge").  In Partridge, the California Supreme Court

24 determined whether a homeowner's policy issued by State Farm covered injuries arising out of

25 an accident that occurred when the defendant was driving his Ford Bronco with two friends.  A

26 pistol was being used to shoot jackrabbits through an open window when the car hit a bump and

27 the pistol discharged.  Prior to the accident, the defendant had modified the pistol by filing the

28 trigger mechanism so that it had "hair trigger action."  The court found that the modification of

1   the pistol and the use of defendant's vehicle were joint causes of the accident.  State Farm had

2   admitted that if the modified pistol had fired in a different setting besides a vehicle, that the

3   action would be covered under the policy.  Therefore, the <u>Partridge</u> court found that the two

4   actions were independent of one another.

5          Here, the use and operation of the Ford truck and the trailer is excluded from coverage.

6   Sran and Fisher argue that the negligent loading of the forklift was independent of the use of the

7   Ford truck and that an accident could have occurred because of the negligent loading of the

8   forklift onto the trailer even if the trailer and truck were not moving.  Sran and Fisher present an

9   example involving a negligently loaded forklift being left on Sran's property and the forklift

10  falling off and injuring someone.  However, in this case it was not merely the act of negligently

11  loading the forklift, but the act of negligently loading the forklift obscuring the lights on the

12  truck.  The example of a negligently loaded forklift falling off and injuring someone involves

13  negligence because of the way that the forklift is secured.  Therefore, the example involving a

14  negligently loaded forklift falling off the trailer is inapposite to this case.

15         Sran and Fisher also use the example of a negligently loaded forklift parked on a farm

16  road on Sran's property at night and someone driving into it because the truck's lights were

17  obscured by the forklift.  If the forklift was loaded onto a trailer connected to a truck and that

18  was left on a farm road on Sran's property at night, the lights would not be on because the trailer

19  and truck would not be moving or operating.  Here, the truck and trailer were moving, so the

20  lights allegedly should have been on and visible.  Therefore, Sran and Fisher's example of

21  leaving the truck and trailer in a field at night is not akin to the truck and trailer operating.  The

22  liability of the insured arises from his use of the Ford truck and trailer.  Therefore, the concurrent

23  cause doctrine does not apply in this instance.

24         4.      <u>Plaintiff Has Established That There is No Coverage Under the Terms of the
           Excess Policy for Claims in the Fisher Action</u>

25

26         The Court finds that Plaintiff has established that there is no genuine issue of material

27  fact that the "motorized vehicles used for farming purposes endorsement" does not apply to the

28  Excess policy and that the use of the trailer is the use of a motor vehicle that is excluded from

coverage pursuant to the motor vehicle exclusion.  The Court also finds that the loading of the forklift onto the trailer and Ford truck is not covered under the Excess policy.  Also, even if the loading of the forklift onto the trailer and Fork truck is covered under the Excess policy, the concurrent cause doctrine does not provide for coverage in this matter because the liability of the insured arises from Sran's use of the Ford truck and trailer, which are not covered under the terms of the Excess policy.  Plaintiff has met his burden of showing an absence of dispute as to a material fact that there is no coverage under the terms of the Excess policy for the claims in the Fisher Action and that Plaintiff does not have to defend or indemnify Sran for the Fisher Action under the Excess policy.  Accordingly, pursuant to Federal Rule of Civil Procedure 56, Plaintiff is granted summary judgment on the Second Cause of Action (Excess policy).

## VI.

## SRAN'S MOTION TO STRIKE NEW ARGUMENTS AND EVIDENCE IN REPLY

On March 25, 2016, Sran filed a motion to strike Plaintiff's new arguments and evidence advanced in its reply.  Sran argues that Plaintiff presented new arguments and evidence regarding the "motorized vehicles used for farming purposes" endorsement in its reply to Sran's opposition to the motion for summary judgment.  Plaintiff did not discuss the "motorized vehicles used for farming purposes endorsement" in its motion for summary judgment.  Sran argues that the Court should not consider these new arguments and evidence in ruling on the motion for partial summary judgment because Sran did not have an opportunity to respond to them.

The Court generally refuses to consider new arguments raised for the first time in a reply brief.  See, e.g., State of Nev. v. Watkins, 914 F.2d 1545, 1560 (9th Cir.1990).  It is generally "improper for the moving party to ... introduce new facts or different legal arguments in the reply brief [beyond] ... [those that were] presented in the moving papers." Ojo v. Farmers Grp., Inc., 565 F.3d 1175, 1186 (9th Cir. 2009) (citing William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, Federal Civil Procedure Before Trial, § 12:107 (The Rutter Group 2005)).  Rule 56(c) simply requires that if the court relies on new materials or arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials.  Beaird v. Seagate

Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (internal citation omitted).

In its motion for summary judgment, Plaintiff set forth the exclusions of the policies that it believed applied to the instant facts.  Sran raised the "motorized vehicles used for farming purposes" endorsement in its opposition as a reason that there is coverage under both the FarmPak policy and Excess policy.  Plaintiff was merely responding to these arguments advanced by Sran when Plaintiff addressed the "motorized vehicles used for farming purposes" endorsement in its reply.  Therefore, the Court does not find that Plaintiff raised new arguments in its reply brief and Sran's motion is denied.

## VII.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for partial summary judgment is GRANTED IN PART as follows:

   a.     Plaintiff is granted summary judgment on the Second Cause of Action (Excess policy); and

   b.     Plaintiff's motion for partial summary judgment is DENIED in all other respects.

2.     Defendant Sran's motion to strike new arguments and evidence advanced in Plaintiff's reply is DENIED.

IT IS SO ORDERED.

Dated:   __May 4, 2016__

_____
UNITED STATES MAGISTRATE JUDGE